# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LEOLA SHANNIE,**

        **Plaintiff,**

v.                                           **Case No. 05-C-71**

**SAKS, INC.,**

        **Defendant.**

## DECISION AND ORDER

Plaintiff Leola Shannie brought the present action against defendant, Saks, Inc. ("Saks"), alleging that it violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2614, by failing to restore her to her position after she went on medical leave. Defendant failed to answer plaintiff's complaint, and I granted plaintiff's motion for a default judgment. Pursuant to Fed. R. Civ. P. 60(b)(1), defendant now moves to vacate the judgment.

## I. BACKGROUND

In September 1993, plaintiff began working for defendant, and in April 2003, commenced work as a sales associate in the men's shoe department at the Boston Store in the Bayshore Shopping Center. In this position, plaintiff earned $7.67 per hour plus commissions and was not required to work evenings or weekends. On October 6, 2003, plaintiff went on medical leave for hernia surgery. She provided defendant with a statement from her physician indicating that she would be incapacitated until November 23, 2003. She stated that she planned to return to work on November 24, 2003.

Defendant states that when plaintiff returned to work, she indicated that she did not want to work nights or weekends and was told that the only position available that fit that requirement was at the loading dock. Defendant further states that plaintiff began working at the loading dock on November 24, 2003, but soon after stopped coming to work and was

fired. Plaintiff states that before returning to work she spoke with defendant's representative, Jennifer, who told her that her former position was unavailable, and that she would be assigned to the loading dock. Plaintiff states that on November 22, 2003, she gave Jennifer a note from her physician stating that she could not lift more than twenty pounds or do repetitive lifting for four weeks. Plaintiff further states that she asked for other work, even if part-time, and that Jennifer said that none was available. Plaintiff denies that she discussed the subject of night and weekend work in her conversation with Jennifer. Plaintiff agrees that on November 24, 2003, she began work on the loading dock, but states that she became sore and ill and was unable to work between November 26 and December 1, 2003, and that on December 2, 2003, defendant terminated her.

Plaintiff subsequently retained counsel, F. Thomas Olson, and on June 18, 2004, he asked defendant to provide him with a copy of plaintiff's personnel file. Although Wisconsin law requires an employer to respond to a request for a personnel file within seven working days of the request, Wis. Stat. § 103.13(2), defendant did not provide plaintiff's file to Olson until August 7, 2004, and only after Olson had written defendant a second letter, this one stating that if defendant failed to respond to his request, he would file a complaint with the state Equal Rights Division.

On September 2, 2004, Olson wrote to defendant's vice-president and corporate counsel, outlining in detail plaintiff's theory of defendant's liability under the FMLA and offering to settle the case for $25,000. Defendant did not respond to Olson's letter. Thus, on November 8, 2004, Olson sent defendant another letter regarding plaintiff's claim. Defendant did not respond until December 8, 2004, and in its response did not address Olson's arguments relating to liability or his offer of settlement.

Thus, on January 21, 2005, Olson filed the present action. On January 26, defendant's vice-president and associate general counsel called Olson and stated that it was his understanding that plaintiff wanted to return to work but did not want to work nights or weekends and that the only available position that fit that requirement was the job on the loading dock. Olson replied that he would have to discuss the matter with plaintiff.

On February 2, Olson called defendant's counsel and told him that plaintiff did not wish to return to work and again offered to settle the matter for $25,000. Defendant's counsel states that if Olson made a specific offer, he mistakenly failed to write it down. Defendant's counsel never responded to Olson's settlement offer. In addition, he failed to file an answer to plaintiff's complaint. Defendant's counsel states that defendant failed to answer the complaint because he thought that he and Olson would engage in settlement discussions. However, he does not state that Olson authorized him not to answer and Olson indicates that he did not extend such an authorization or represent that he would not seek a default judgment.

On March 16, 2005, pursuant to plaintiff's motion, I entered a default judgment against defendant in the amount of $32,219.08. On April 8 a notice of judgment was sent to defendant. Subsequently, defendant filed the present motion.

## II. DISCUSSION

Defendant argues that I should vacate the judgment pursuant to Fed. R. Civ. P. 60(b)(1), based on its "excusable neglect." The Seventh Circuit has made clear that "a trial court has discretion to consider the equities and then determine whether a missed filing deadline attributable to an attorney's negligence is (or is not) 'excusable neglect.'" Robb v. Norfolk & Western Ry. Co., 122 F.3d 354, 359 (7th Cir. 1997) (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380 (1993)). In the exercise of its discretion, a

court may decline to find excusable neglect where a lawyer missed a filing deadline because he was inattentive to the litigation. Id.; see also Matter of Plunkett, 82 F.3d 738, 742 (7th Cir. 1996) (stating that "inattentiveness to the litigation is not excusable."). Carelessness in conducting litigation can amount to "a deliberate and willful abdication" of a party's legal rights. Zuelzke Tool & Eng'g. Co. v. Anderson Die Castings, Inc., 925 F.2d 226, 119 (7th Cir. 1991). Although a trial on the merits is preferred, C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co., 726 F.2d 1202, 1205 (7th Cir. 1984), relief under Rule 60(b) is an extraordinary remedy that is granted only in exceptional circumstances. Tobel v. City of Hammond, 94 F.3d 360, 362 (7th Cir. 1996). Finally, in exercising its discretion, a court may consider an attorney or attorneys' overall conscientiousness in handling a case. Robb, 122 F.3d at 362 (stating that court could consider attorney's overall record as long as court does not treat it as a dispositive factor).

In the present case, considering all of the relevant circumstances, see Pioneer, 503 U.S. at 395, I conclude that defendant's failure to timely file an answer was the result of inattentiveness to the litigation and not excusable neglect. Nothing in the record suggests that defendant had a good reason for not timely answering. Defendant's counsel states that he failed to timely file an answer because he believed "that the parties were engaged in settlement discussions." (Def.'s Mem. at 4). However, the record indicates that defendant did not engage in settlement negotiations. Plaintiff twice advanced settlement proposals to which defendant did not respond. Plaintiff first made a settlement proposal on September 2, 2004. Defendant did not respond to the proposal and plaintiff thus sent a follow-up letter. On December 8, 2004, over two months after plaintiff's counsel had advanced an offer, defendant sent a letter in response but in the letter did not address plaintiff's settlement offer. On February 2, 2005, in a telephone conversation, plaintiff again advanced a settlement offer

and, again, defendant did not respond to it, either in the phone conversation or at any time thereafter. Thus, defendant's counsel's statement that he failed to file a timely answer because he intended to discuss settlement is unpersuasive. The record indicates that defendant was as inattentive to discussing a settlement as it was to filing a timely answer.

Further, defendant was inappropriately unresponsive to plaintiff at other stages of the matter. Even though Wisconsin law gave defendant seven working days to provide plaintiff with a copy of her personnel file after she requested it, defendant did not respond to plaintiff's request for almost two months and not until plaintiff's counsel had advised that he was prepared to file a complaint with the state Equal Rights Division. As stated, defendant also did not timely respond to plaintiff's September 2, 2004 letter.

In sum, nothing in the record suggests that defendant had good cause for not timely filing an answer or that its neglect should be excused. In fact, defendant was consistently inattentive to the case. Therefore, I will deny defendant's motion to vacate the default judgment.

**NOW, THEREFORE, IT IS ORDERED** that the defendant's motion to vacate the default judgment is **DENIED**.

Dated at Milwaukee, Wisconsin, this \_\_\_\_ day of July, 2005.

_____
LYNN ADELMAN
District Judge